APPEAL OF NORWICH & WORCESTER RAILROAD CO.

Docket No. 2020. Submitted May 27, 1925. Decided June 30, 1925.

1. A lessee railroad corporation is not affiliated with the lessor merely because of the lessee's contractual control of the lessor's properties where the lessee owns only a small proportion of the lessor's stock and there is no evidence as to the rest.

2. Where by contract the lessee in 1919 pays the Federal income tax of the lessor for 1918, the amount thereof is not income of the lessor for 1918.

3. *Quaere:* Whether it is income for 1919?

*O. R. Folsom-Jones, Esq.,* for the taxpayer.
*Percy S. Crewe, Esq.,* for the Commissioner.

Before STERNHAGEN, LANSDON, GREEN, and LOVE.

The Commissioner determined a deficiency in income and profits tax of $3,425.74 for the calendar year 1918, resulting from the increase of the taxpayer's net income by the amount of $28,537.84, being its Federal income tax paid under contract by its lessee, The New York, New Haven & Hartford Railroad Co., hereinafter called the New Haven. The taxpayer also claims to be affiliated with the New Haven for the year in question, in which event the deficiency falls.

### FINDINGS OF FACT.

During the calendar year 1918 the taxpayer was a corporation and owned certain railroad and other properties. It had outstanding 66 shares of common stock and 30,000 shares of preferred. The New Haven owned none of the common and 971 shares of the preferred.

During the taxable year the New Haven had a contract, sometimes called a lease, with the taxpayer, originally made in 1869 with the New Haven's predecessor, by virtue of which the New Haven was in possession of and operated the taxpayer's business, franchise, and properties for a term of 100 years from 1869. Omitting quotation or precise verbiage, the general provisions of the contract were as follows, substituting the New Haven for the original predecessor:

It recites the advantage to the public and the parties of having the taxpayer's railway and steamboat property managed and operated by the New Haven. The taxpayer leases its railway properties, rights and franchises, income, and all other properties, except corporate records and books of account. The New Haven may vote the taxpayer's shares of steamboat stock. The New Haven pays a fixed rent semi-annually to the taxpayer's treasurer in an amount equal to 10 per cent on the taxpayer's capital stock, free from taxes. The taxpayer has the right of forfeiture and re-entry after default of thirty days in the payment of the rent. The New Haven pays all taxes, including income taxes, of the taxpayer. The New Haven insures and restores the property for the benefit of the taxpayer. The New Haven maintains the property in good condition and sur-

renders it to the taxpayer at the end of the term in accordance with an inventory. Expenditures for upkeep are determined by a managing agent appointed by both parties. The New Haven indemnifies the taxpayer against suits, and agrees to perform the obligations of the taxpayer. The taxpayer transfers to the New Haven a contract with the New London Northern, with the right of renewal.

The New Haven assumes the bonded and floating debt of the taxpayer, using for that purpose sums due and accruing to the taxpayer. The New Haven performs certain contracts of the taxpayer. If agreed, the taxpayer may sell some of its property and relocate its property at Worcester. The taxpayer is to maintain its corporate organization and do everything necessary to carry out the agreement. The railroad business and properties shall be operated by a managing agent. Provision is made for the collection and holding of monies and for arbitration.

Since the making of the original contract the stockholders of the taxpayer by a majority vote agreed to the reduction of the amount of rent from 10 per cent to 8 per cent on the outstanding capital stock. Other modifications were made from time to time in the details of the matters covered by the contract.

In 1919 the New Haven paid the Federal income tax of $28,536.64 returned by or for the taxpayer on its 1918 income of $239,805.35. The Commissioner treated such payment by the New Haven as additional income of the taxpayer for 1918 and determined a deficiency of $3,425.74 for 1918.

### DECISION.

The deficiency determined by the Commissioner is disallowed.

### OPINION.

STERNHAGEN : The taxpayer contends, as did the *Old Colony R. R. Co.*, 1 B. T. A. 1067, that it is affiliated with the New Haven because of the extent to which its affairs are in the hands of the New Haven under its contract of lease and operation. Only 971 shares out of 30,000 shares of its preferred stock and none of its common stock was owned by the New Haven, and there is no evidence from which we can infer that the New Haven exercised any actual control of the rest. In the *Old Colony* appeal, *supra*, and in the *Appeal of Hartford & Connecticut Western R. R. Co.*, 2 B. T. A. 211, we have said that control of stock is not necessarily predicated on control of corporate business and property and that a lessee is not, *ipso facto*, affiliated with its lessor, even although the properties of the two are necessary parts of the same transportation system. We can not so

far disregard the terms of the statute as to construe control of the stock to mean control of the business. We may, as we have sometimes done, examine the facts as to the business relations of the two entities in order to determine whether the one corporation controls substantially all the stock of the other. This we did in the *Hartford* appeal, where we held that the ownership of a majority and the circumstances as to the remainder gave the one corporation control of substantially all the stock of the other.

But in the present appeal, the New Haven is in no position to dominate the owners of the stock. They have, individually and collectively, entire independence from the New Haven, excepting only that they shall abide by their corporate contract. This limitation is self-imposed. Likewise, the New Haven must perform its contract, or these holders of an adverse interest may enforce their remedy of forfeiture and re-entry. Unlike the situation in the *Hartford* appeal, the power here rests with the remaining stockholders and not with the New Haven. From the standpoint of income, it is clear that the income of the taxpayer is of no concern to the New Haven. After the New Haven pays its rent it has no interest in or control over the taxpayer's purse. The taxpayer receives its rent and pays such dividends as it chooses. What common interest exists which justifies the absorption of the taxpayer's income in the New Haven's net loss and its consequent escape from tax? We perceive none, and hold that separate returns are proper under the statute.

This makes it necessary for us to decide the second question; whether the payment in 1919 by the New Haven of the Federal income tax upon the taxpayer's 1918 net income operates, in effect, to increase the taxpayer's 1918 income by the amount thus paid, and hence to increase the tax in the amount of the present deficiency. The Commissioner argues that the financial benefit of the tax saved is the exact measure of additional income—that, in a new light, a penny saved is a penny earned. That one does not avoid tax by having another pay his bills ought to be clear; but the extent to which the logic of the statement may lead is far from clear. See *Duffy* v. *Pitney*, 2 Fed. (2d) 230. In the present appeal, however, we are saved the necessity of drawing the line, because nothing was gained by the taxpayer in any event in 1918. The tax on 1918 income was not due until 1919, *Appeal of L. S. Ayers & Co.*, 1 B. T. A. 1135; and it was not until then paid by the New Haven. This can not serve to increase the income of 1918, whatever may be its effect upon 1919 income. For this reason the deficiency for 1918, being founded entirely upon this alleged increase, can not be sustained.